UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14 CR 250 CDP |
| ) | No. 4:15 CR 294 CDP |
| DAVID BRECKER, ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S TRIAL BRIEF

The United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Stephen Casey, Assistant United States Attorney for said District, submits its Trial Brief.

This brief and memorandum is intended as a general guide for the Court. It is not intended as a comprehensive statement of the government's case, nor is it intended to be in the nature of a bill of particulars that would fix, bind, or in any way limit the government to a set theory of proof.

**I.    FACTS**

Beginning in approximately 2010, Defendant David Brecker began acquiring high grade marijuana from sources of supply in California and distributing it in the St. Louis area. Eventually, Brecker's operation partnered with the marijuana trafficking organization headed by Kyle Kienstra. As part of both organizations, Brecker frequented the marijuana farms of various marijuana growers in California with co-defendants and others to directly negotiate marijuana prices, deliver proceeds, and, in some instances, supervise and aid in the packaging and transportation of a marijuana order. Once purchased, both Kienstra's and Brecker's marijuana was transported to St. Louis by various means, including through the United States Mail and via

aircraft.  Brecker and others received the marijuana in St. Louis and distributed it, generating significant proceeds.  At different times during the course of the conspiracy, Brecker admitted to law enforcement that he obtained and distributed large amounts of high-grade marijuana and that he partnered with the Kienstra organization to do so.

Brecker also possessed and utilized firearms.  In 2012, law enforcement discovered $45,000 in marijuana proceeds and five loaded firearms as part of a controlled delivery to Brecker at his residence in St. Louis of approximately 48 pounds of high grade marijuana.  In 2014, a search warrant at Brecker's residence in Marin County, California revealed two loaded firearms.  The government anticipates witnesses will testify that Brecker often carried firearms on his person or in his vehicle when conducting marijuana or money transactions.

Brecker laundered marijuana the marijuana proceeds for both his and Kienstra's organizations.  Brecker laundered fund in two main ways.  First, Brecker and co-defendant Shelly Baker collected the marijuana proceeds from distributors and other members of the conspiracy in St. Louis and elsewhere.  Once collected, Brecker and Baker delivered the proceeds back to Kienstra and others (such as sources of supply) both in St. Louis and California via a variety of ways, including smuggled inside envelopes in luggage that was carried onto commercial flights and private aircraft.

Second, Brecker laundered marijuana proceeds through a series of financial transactions.  At different times during the course of the conspiracy, Brecker (aided by Baker) used marijuana proceeds to purchase cashier's checks, deposited proceeds at a certain bank location then withdrew the funds at another, used proceeds to pay bills/expenses on behalf of other conspirators, concealed proceeds by transferring funds through various accounts, and sheltered proceeds utilizing front/nominee businesses such as Tropical Sun Tanning and Midwest Institute

for Addiction.  Further, in order to avoid law enforcement detection, Brecker utilized Baker to act as a straw renter on properties utilized by Brecker and other co-conspirators as residences or "stash houses," and paid bills attendant to those residences.

Finally, Kienstra and Brecker used marijuana proceeds to purchase the property located at 12722 Bluff Creek Road, Zenia, California and the cultivation/farming equipment that was stored thereon.  Kienstra and Brecker utilized the property and equipment to grow marijuana.  Brecker admitted to law enforcement that property was utilized to grow marijuana.

## II.     ELEMENTS OF THE CHARGED CRIMES

### A.     Conspiracy to Possess and Possess with Intent to Distribute Marijuana

Counts I and II of the Indictment in Case No. 4:14 CR 250 charges Brecker with a conspiracy to distribute and possess with intent to distribute 100 kilograms or more of marijuana. The essential elements of this violation are that (1) defendant and at least one other person reached an agreement to distribute or possess with the intent to distribute marijuana; (2) defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or some later time while the agreement was still in effect; (3) defendant knew the purpose of the agreement at the time he joined; and (4) the offense involved 100 kilograms or more of marijuana.

### B.     Conspiracy to Launder Money

Count III of the Indictment in Case No. 4:14 CR 250 charges Brecker with a conspiracy to launder drug proceeds.  The essential elements of this violation are: (1) two or more persons reached an agreement or understanding to conduct illegal financial transactions; (2) the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached, or at some later time while it was still in effect; and (3) at the time the defendant joined in the

agreement or understanding, he knew of the purpose of the agreement or understanding.

Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i) are the underlying offenses to the conspiracy. The essential elements of Title 18, United States Code, Sections 1956(a)(1)(A)(i) are: (1) the defendant conducted at least one financial transaction which affected interstate or foreign commerce; (2) the defendant conducted the financial transaction(s) with money that involved the proceeds from the unlawful distribution of marijuana; (3) at the time the defendant conducted the financial transaction(s), the defendant knew the money represented the proceeds of some form of unlawful activity; and (4) the defendant conducted the financial transaction with the intent to promote the carrying on of the conspiracy to distribute marijuana.

The essential elements of Title 18, United States Code, Section 1956(a)(1)(B)(i) are: (1) the defendant conducted at least one financial transaction which affected interstate or foreign commerce; (2) the defendant conducted the financial transaction(s) with money that involved the proceeds from the unlawful distribution of marijuana; (3) at the time the defendant conducted the financial transaction(s), the defendant knew the money represented the proceeds of some form of unlawful activity; and (4) the defendant conducted the financial transaction(s) knowing that the transaction(s) were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the conspiracy to distribute marijuana.

C.   Possession of a Firearm in Furtherance of a Drug Trafficking Crime

Count I of the Indictment in Case No, 4:15 CR 294 charges Brecker with possessing a firearm in furtherance of a drug trafficking conspiracy. The essential elements of this violation are: (1) the defendant committed a drug trafficking crime; and (2) the defendant knowingly possessed a firearm in furtherance of that crime.

III.   **LEGAL ISSUES & MOTIONS IN LIMINE**

A.     Conspiracy Generally

"A single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." *United States v. Donnell*, 596 F.3d 913, 923 (8th Cir. 2010).  In addition, no formal or express agreement is required.  *Id*.  Rather, the agreement may be tacit and based upon the actions of the defendant and others.  *Id*.  Proof of an overt act in furtherance of the conspiracy is also not required.  *United States v. Shabani*, 513 U.S. 10, 17 (1994); *United States v. White*, 408 F.3d 399, 401 (8th Cir. 2005).

To be a conspirator, one does not have to be aware of the existence of all other conspirators or all the details of the conspiracy.  *United States v. Huggans*, 650 F.3d 1210, 1222 (8th Cir. 2011).  However, the Government must show some element of cooperation beyond mere knowledge of the existence of the conspiracy.  *United States v. Slagg*, 651 F.3d 832, 840 (8th Cir. 2011) (finding record was "replete" with evidence of regular cooperation between conspirators from which jury could infer "ongoing, facilitative relationship between parties who were aware of the scope of one another's activities") (quoting *United States v. Roach*, 164 F.3d 403, 412 (8th Cir. 1998)).

Once a conspiracy is proven, a defendant may be criminally liable for any substantive crime committed by a co-conspirator in the course and furtherance of the conspiracy.  *United States v. Bowie*, 618 F.3d 802, 815 (8th Cir. 2010).  To be held criminally liable, a conspirator need not join a conspiracy at its inception.  Indeed, each person joining a conspiracy is taken to adopt, and is bound by, the prior acts and statements of co-conspirators made in furtherance of the common objective.  *See United States v. Foxx*, 544 F.3d 943, 953 (8th Cir. 2008) ("When a defendant joins a conspiracy in its later stages, the concept of foreseeability (a forward looking

concept) must be turned around 180 degrees and be applied to the conduct of co-conspirators occurring before the entry of [that] particular defendant") (alterations in original) (internal quotation marks omitted). "Once the existence of a conspiracy has been established, even evidence connecting a particular defendant to the conspiracy may constitute proof of the defendant's involvement in the scheme." *United States v. Banks*, 706 F.3d 901, 906 (8th Cir. 2013); *see also United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004) (once proof of a conspiracy is shown, only slight additional evidence is necessary to connect a particular defendant with it). In order to prove a conspiracy, the Government may rely "wholly on circumstantial" evidence. *Donnell*, 596 F.3d 913 at 923.

    B.    <u>Co-conspirator Statements</u>

At trial, the Government plans to introduce evidence of statements made by a number of co-conspirators and co-defendants that implicate Brecker. Federal Rule of Evidence 801(d)(2)(E) provides that a statement "made by the party's co-conspirator during and in furtherance of the conspiracy" is not hearsay. *See Bourjaily v. United States*, 483 U.S. 171, 173 (1987). For the Court to admit a statement pursuant to Rule 801(d)(2)(E), it must "find by a preponderance of the evidence that a conspiracy existed involving the declarant and the party against whom the statement is offered and that the statements were made by the declarant in the course of and in furtherance of the conspiracy." *United States v. Spotted Elk*, 548 F.3d 641, 661 (8th Cir. 2008).

In *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978), the Eighth Circuit established a procedure for courts to employ when faced with a co- conspirator's statement. In *Bell*, the court noted that "[i]f the prosecutor propounds a question which obviously requires a witness to recount an out-of-court declaration of an alleged coconspirator, the court, upon a

timely and appropriate objection by the defendant may conditionally admit the statement." *Id.* at 1044.  Indeed, "[a] court may conditionally admit a challenged statement subject to later proof to satisfy the coconspirator rule and defer a final ruling on admissibility until after hearing the relevant evidence." *United States v. Roach*, 164 F.3d 403, 409 (8th Cir. 1998).

In order for a coconspirator's statement to be admissible at trial, the existence of the conspiracy and the defendant's and declarant's complicity in it must be proved by a preponderance of evidence.  *Bourjaily v. United States*, 483 U.S. 171, 175 (1987*); see also Cowling*, 648 F.3d at 698.  In *Bourjaily*, the Supreme Court held that a court may consider the hearsay statements themselves for the purpose of making the preliminary factual findings required by Rule 801(d)(2)(E).  *Id*. at 178; *see also United States v. Ragland*, 555 F.3d 706, 713 (8th Cir. 2009).  In addition, the necessary preliminary findings may be supported completely by circumstantial evidence, or a defendant's own conduct and admissions.  *Id*. at 181; s*ee also United States v. Townsley*, 843 F.2d 1070, 1084 (8th Cir. 1988).

Under Rule 801(d)(2)(E), the phrase "during the course and in furtherance of the conspiracy" has been afforded a broad construction.  *Ragland*, 555 F.3d at 713 (8th Cir. 2009); *United States v. Cazares*, 521 F.3d 991, 999 (8th Cir. 2008).  Since the statements must do more than inform but advance the objectives of the conspiracy, the nature of the statements, along with when and under what circumstances they were made, must be considered.  *United States v. Mayberry*, 896 F.2d 1117, 1121 (8th Cir. 1990); *Ragland*, 555 F.3d at 713.  Accordingly, the "in furtherance" requirement is satisfied where the statement in question furthers in any way the objectives of the conspiracy.  *United States v. Manfre*, 368 F.3d 832, 838 (8th Cir. 2004); *United States v. Guerra*, 113 F.3d 809, 814 (8th Cir. 1997).

C. Expert Witness Testimony

At trial, the Government plans to introduce expert opinion testimony through a number of different witnesses. Under Federal Rule of Evidence 702, a qualified witness may testify as an expert, "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The expert's testimony is still admissible even if it "embraces an ultimate issue to be decided by the trier of fact." *Id.* However, no expert testimony may be admitted as to whether the defendant had the requisite mental state constituting an element of the crime. *Id.* Admission of expert testimony or lay opinion testimony is a matter within the broad discretion of the trial judge that will not be disturbed absent an abuse of that discretion. *United States v. Anderson*, 446 F.3d 870, 874 (8th Cir. 2006); *United States v. Roach*, 644 F.3d 763, 763 (8th Cir. 2011) (advocating a standard of "substantial deference").

The Eighth Circuit has repeatedly recognized that Rule 702 permits a district court to allow the testimony of a witness whose knowledge, skill, training, experience or education will assist a trier of fact in understanding the business of drug trafficking. *United States v. Robertson*, 387 F.3d 702, 704 (8th Cir. 2004) (citing *United States v. Solorio-Tafolla*, 324 F.3d 964, 965 (8th Cir. 2003)) (expert allowed to testify about "(1) the price of drugs in drug trafficking; (2) drug quantities obtained for personal use; (3) drug conspiracies and roles of drug traffickers; (4) how to manufacture methamphetamine; (5) drug investigation and wiretap operations; and (6) the lack of fingerprint evidence on packaging"); *Gill*, 513 F.3d at 847 (link between firearms and drug trafficking).

    D. <u>Testimony of Plea Agreements in Direct Examination</u>

The government intends to elicit testimony from witnesses who have a plea agreement and/or cooperation agreement with the government. During direct examination, the government

intends to discuss these agreements.

It is proper for the Government to adduce this testimony from its witnesses rather than have to wait for cross-examination to draw out details of the witness agreements.  In the Eighth Circuit, the law is clear that "a confederate's guilty plea is admissible, *even on the Government's direct examination of the witness*, as evidence of the witness' credibility, or of his acknowledgment of participation in the offense."  *United States v. Cervantes*, 646 F.3d 1054, 1060 (8th Cir. 2011) (emphasis added) (quoting *United States v. Kroh*, 915 F.2d 326 (8th Cir. 1990).  The witness's plea or evidence thereof, however, "is not to be admitted as substantive evidence of the defendant's guilt," and the jury should be so instructed.  *Id*; *Kroh*, 915 F.2d at 331.  In fact, the admission into evidence of the written plea agreements of co-conspirators is appropriate provided that the jury is instructed that they are not evidence of substantive guilt, but admitted for the purpose of acknowledging participation in the offense or establishing credibility. *United States v. Misle Bus & Equipment Co.*, 967 F.2d 1227, 1233 (8th Cir. 1992); *United States v. McClellon*, 578 F.3d 846, 859 (8th Cir. 2009).  Believing that a portion of defendant's strategy will be to attack the credibility of the Government witnesses who have entered into plea agreements, the prosecution properly may bring out relevant details concerning these matters during direct examination.  *United States v. Koppers Co., Inc.*, 454 U.S. 1083 (1981) (evidence that the Governments' principal witnesses had earlier perjured themselves during early phases of investigation was properly elicited by Government on direct examination in anticipation of defense counsel's attempt to attack witnesses' credibility); *see also McClellon*, 578 F.3d at 859 (the Government's admission of plea agreement did not unfairly bolster witness' credibility).  Permitting the Government to elicit this information first is premised on the theory that "[i]f the prosecution failed to elicit the impeaching evidence in the first instance, the jury might

improperly assume the Government was intentionally hiding it." *United States v. Hasenstab,* 575 F.2d 1035, 1040 (2d Cir. 1978). The Government's disclosure during direct examination of its witness' plea agreement is proper to diffuse any attempt by defendants to show bias on cross-examination. *United States v. Roth*, 736 F.2d 1222, 1226-27 (8th Cir.), *McClellon*, 578 F.3d at 859:

> [W]hile the existence of a plea agreement may support the witness' credibility by showing his or her interest in testifying truthfully, the plea agreement may also impeach the witness' credibility by showing his or her interest in testifying as the government wishes regardless of the truth. Introduction of the entire plea agreement permits the jury to consider fully the possible conflicting motivations underlying the witness' testimony and, thus, enables the jury to more accurately assess the witness' credibility.

(quoting *United States v. Drews*, 877 F.2d 10, 12 (8th Cir. 1989) (alterations in original). A limiting instruction telling the jury that it may not infer defendant's guilt from this evidence will be submitted by the Government. *United States v. Campbell*, 848 F.2d 846, 853 (8th Cir. 1988).

    E.    <u>Motion in Limine: Summary Charts Are Admissible.</u>

The Government has notified defense counsel and the Court that it expects to introduce summary charts that identify to prove defendant's money laundering activity. The Government will introduce this information through one of the case agents. Both the summary chart and the agent's testimony are admissible.

First, the chart is admissible. Federal Rule of Evidence 1006 permits the Government to introduce, in the form of a chart, summary, or calculation, "the contents of voluminous writings... which cannot be conveniently examined in Court...." In order for the chart to be admitted into evidence, the Government must include: (1) only evidence previously introduced; (2) fairly summarized evidence; and (3) make available for cross-examination all the documents to prepare

10

the chart. *United States v. Orlowski*, 808 F.2d 1283, 1289 (8th Cir. 1986). Second, the Government may use a witness to discuss the chart so long as the witness' testimony is based on evidence in the case and the witness is available for cross-examination. *United States v. Caswell*, 825 F.2d 1228, 1235 (8th Cir. 1987).

Here, the summary chart and the witness will both be available for cross-examination. Furthermore, the evidence summarized in the chart will have previously been introduced into evidence and made available for cross-examination. Consequently, the summary charts should be admitted into evidence.

F. Motion in Limine: No Evidence Not Produced

The Government moves for an order prohibiting the defendant from admitting any evidence, including books, papers, documents, data, photographs, tangible objects, reports, examinations, tests or expert opinions. The defendant has not turned over any such evidence and, if the defendant has such evidence, he is required to do so under Federal Rule of Criminal Procedure 16(b) and the government has requested he do so. If the defendant has such evidence and has failed to produce it by the time of trial, the government asks the Court to prohibit the defendant from introducing the evidence. Fed. R. Crim. P. 16(d)(2)(C).

G. Motion in Limine: Exclude References to Potential Punishment

The Government moves this Court to enter an order prohibiting defendant and his counsel from commenting on the potential punishment or sentencing if defendant is convicted. Defendant's possible penalty range is irrelevant to the issue of defendant's guilt pursuant to Rule 402. Even if evidence of defendant's possible penalty range were not entirely without probative value, it still would be unduly prejudicial, would confuse the issues, and would mislead the jury

under Federal Rule of Evidence 403.

It is black letter law that "[s]entencing is generally one of the areas barred from comment during closing argument to the jury because the jury is supposed to be concerned solely with the determination of guilt." 75 Am.Jur.2d Trial § 572 (1991).  Accordingly, defendant's possible penalty range should not be inquired into on cross-examination or otherwise raised in evidence or argument.  Defendant's potential term of imprisonment or the factors supporting that term should not be a consideration in the jury's determination of guilt or innocence. Therefore, the Government requests that this Court enter an order precluding defendant from attempting to secure the jury's sympathy by commenting on the potential punishment or sentencing should the defendant be convicted, including any argument that defendant's "life is on the line" or similar argument.

      H.      <u>Motion in Limine: Videotape Evidence Admissible</u>

The Government intends to introduce portions of security video surveillance recordings depicting the defendant and co-defendant Shelly Baker at an HH Gregg store in Chesterfield. The recording was seized as evidence by law enforcement authorities investigating the discovery of a bag of marijuana at the store by employees that fell from Shelly Baker's bag.  By showing defendant and Baker together, and that Baker had marijuana, the video has substantial probative value to establishing the relationship between the two.

Admissibility of video and audio recordings is within the sound discretion of the trial court and will not be reversed unless there has been an abuse of discretion.  *United States v. Martinez*, 951 F.2d 887, 888 (8th Cir. 1991).  Before introducing video recordings, "the Government must make a *prima facie* showing of the tape's trustworthiness." *United States v.*

*Webster*, 84 F.3d 1056, 1064 (8th Cir. 1996).  Historically, the foundation for a video's admissibility has been determined by the criteria in *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974).  *McMillan* suggests: (1) that the videotaping device was capable of taping the events being offered into evidence, (2) that the operator of the video camera was competent to operate the device, (3) that the recording is authentic and correct, (4) that there have been no changes to the recording, (5) that the recording has been preserved in a manner that is shown to the court, (6) that the taped parties are identified, and (7) that the behavior elicited was made voluntarily and in good faith, without inducement.  *Id*.  The *McMillan* criteria "while helpful, merely provide guidance to the district court" and are not essential to the authentication and admission of videotapes.  *United States v. Clarke*, 986 F.2d 65, 68 (4th Cir. 1993).

The Government intends to call the law enforcement witness that viewed and seized the video into evidence.  The witness will attest to the images depicted in the video, and to the retrieval of the recording from the store.  The witness will testify that the video fairly and accurately recorded the events depicted on the recordings.  Further, the witness will testify to the condition of the video recording once it was seized, and that the recording were properly preserved after it was obtained from various store locations, with no alterations or changes. Finally, the recording shows that the behavior of the participants was voluntary.

With technological progress, courts have streamlined and drifted from the *McMillan* foundation and the foundation for admissibility has been described in a non-technical, common sense fashion.  *See United States v. Hughes*, 658 F.2d 317, 322 (5th Cir. 1981).  For example, the very existence of a videotape with recorded materials itself proves the equipment functioned properly and that the operator of the equipment was competent to operate such a device.  *United*

13

*States v. Roach*, 28 F.3d 729, 732 (8th Cir. 1994).  Additionally, admissibility is possible without testimony regarding authenticity and without testimony identifying the parties on the videotape. *Id*.  Moreover, if the defendant wishes to contest the tape's admissibility, it is the defendant's obligation to show either that the tape has been altered or that the actions on the videotape were not voluntary. *Id*.

More recently, devices that automatically record information have been deemed to meet the *McMillan* criteria.  *See United States v. Wells*, 347 F.3d 280 (8th Cir. 2003).  In *Wells*, the court admitted recordings of phone numbers by cell phones and pagers.  As in *Roach*, the *Wells* court found that the recording itself showed that the equipment functioned.  *Id*. at 289. Additionally, the *Wells* court used the testimony of a law enforcement officer who stated he was able to obtain the numbers from the recordings.  *Id*.  These facts, plus no showing that there was reason to believe that law enforcement altered the recordings, led the court to admit the recordings into evidence.  *Id*.  Absent proof otherwise, a court may assume that a recording has not been altered and has been properly maintained.  *Id*.  Likewise, tapes are admissible when testimony from investigators indicates that they are "fair and accurate." *United States v. Panas*, 738 F.2d 278, 286 (8th Cir. 1984).

**IV      FORFEITURE ALLEGATION**

If the jury finds the defendants' guilty of the charges in the Indictment, the Government will seek forfeiture of all property derived from or used in connection with these felonies pursuant to the provisions of Title 21, United States Code, Section 853.

According to Federal Rule of Criminal Procedure 32.2(b)(5), "if the indictment or information states that the government is seeking forfeiture, the court must determine *before the*

14

*jury begins deliberating* whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict" (emphasis added).  At the present time, it is unclear whether the defendant intends to waive the jury on the issue of the forfeiture of property alleged in the Indictment.

If the defendant requests that the jury be retained after it delivers its verdict on the charges, "[t]he only issue for the jury . . . would be whether the government has established the requisite nexus between the property and the offense" by a preponderance of the evidence. Fed. R. Crim. P. 32.2, advisory cmte. note; *see also United States v. Gregoire,* 638 F.3d 962, 972 (8th Cir. 2011) (holding that jury's role in forfeiture phase of trial is limited to determining the "forfeitability of *specific property*" (emphasis added)).

"The jury, however, would not have any role in determining whether a defendant had an interest in the property to be forfeited." Fed. R. Crim. P. 32.2, advisory cmte. note; *see also* Fed. R. Crim. P. 32.2(b)(2)(A); *United States v. Andrews*, 530 F.3d 1232, 1236 (10th Cir. 2008) (stating that when the court determines the forfeitability of property, it does not, and indeed may not, determine the rights of third parties in the property, as the ownership issue is deferred to the ancillary proceeding); *United States v. Wittig,* 2006 WL 13158, *3 (D. Kan. 2006) (finding that defendant's argument that the forfeited property does not belong to him "is premature and not his to make"; "a defendant does not have standing to object to forfeiture on the grounds that a third party owns the property"); *accord United States v. Weidner*, 2003 WL 22176085, *1 (D. Kan. 2005).  Upon a jury finding that the property bears the necessary connection to the offense, the Court then issues a preliminary order forfeiting the defendant's interest in the property, if any. Fed. R. Crim. P. 32.2(b)(2).

In this case, the Government does not request that any forfeiture determination be made by the jury. The defendant, however, nonetheless retains the right under Federal Rule of Criminal Procedure 32.2(b)(5) to request a jury determination on the limited issue of any specific property's connection to the offense.

The Government respectfully requests that the Court conduct an on-the-record colloquy with the defendant to determine whether the defendant requests a jury and to ensure that any waiver of the right to a jury on the forfeiture issues is knowing and voluntary. *Cf. United States v. Gregoire,* 638 F.3d 962, 972 (8th Cir. 2011) (finding it unnecessary to decide if the court's failure to advise the defendant of his right to a jury under Rule 32.2(b)(5) would invalidate the forfeiture judgment because the government merely sought a money judgment), *with United States v. Hively*, 437 F.3d 752, 763 (8th Cir. 2006) (holding, under former Rule 32.2(b)(4), that defendant waived his right to have the jury determine the forfeiture by not making a specific request to have the jury retained for that purpose).

The Advisory Committee Notes to Rule 32.2 indicate that, "[a]lthough the rule permits a party to make this request [for a jury determination of forfeiture issues] just before the jury retires, it is desirable, when possible, to make the request earlier, *at the time when the jury is empaneled*. This allows the court to plan, and also allows the court to tell potential jurors what to expect in terms of their service" (emphasis added). The Government therefore requests that the Court conduct the requested colloquy at the earliest available opportunity in order to promote judicial economy and to permit it to provide the jury with reasonable expectations as to their length of service. *See United States v. Reese*, 2012 WL 2861350 (D.N.M. July 9, 2012)

16

(ordering defendants to make known whether they intended to request a jury determination of forfeiture five days before trial "[i]n order to conserve judicial resources").

If the defendant does request a jury determination of forfeiture issues, it may be necessary to introduce additional evidence to the jury to establish the forfeitability of the alleged items. To establish the forfeitability of the property, the Government need not put forth proof beyond a reasonable doubt; rather, it must merely prove that is more likely than not that the property sought to be forfeited was derived from or used in connection with the crimes charged, i.e., the preponderance of the evidence must support that conclusion. *United States v. Keene*, 341 F.3d 78, 85B86 (1st Cir. 2003). At this time, the Government believes that the testimony of the supervisory agent who investigated this case will be adequate to meet this purpose. The Government expects such a proceeding would take less than a day.

## V.     CONCLUSION

This brief addresses certain issues that may arise at trial. Should additional issues arise that have not been addressed, the Government requests the opportunity to provide additional briefing. The Government respectfully requests that the Court sustain the Government's previously filed motion *in limine*.

        Respectfully Submitted,

        RICHARD G. CALLAHAN
        United States Attorney

        */s/ Stephen Casey*
        Stephen Casey #58879MO
        Assistant United States Attorney
        111 S. Tenth Street, 20th Floor
        St. Louis, Missouri 63102
        (314) 539-2200

## **CERTIFICATE OF SERVICE**

   I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

                         */s/ Stephen Casey*